UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE CRUZ ALONZO,

                Petitioner,              Case No. 1:14-cv-946

v.                                     Honorable Janet T. Neff

SHERRY BURT,

                Respondent.

_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.    Factual allegations

Petitioner Jose Cruz Alonzo presently is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility.  On June 1, 2010, Petitioner arrived at the Kent County Circuit Court for his scheduled trial on several charges: two counts of assault with intent to commit murder, one count of felon in possession of a firearm, one count of carrying a concealed weapon, and one count of felony firearm.  (Plea trancript, PageID.76.)[1]  Petitioner had three prior felony convictions, so he was facing enhanced sentences as a fourth felony offender under MICH. COMP. LAWS § 769.12.  (*Id*.)

Petitioner came to court with every intention of going forward with trial.  (*Id*.)  The prosecutor first put the pending plea offer on the record.  (*Id*.)  The prosecutor noted that if Petitioner were convicted of all charges, he would face a minimum sentence of 270 months.  (*Id*.)  The prosecutor informed the court that Petitioner had rejected an offer to plead to one count of assault with intent to murder and one count of felony firearm with an agreement for a minimum sentence not to exceed twenty years.  (*Id*.)  The court confirmed Petitioner's intention to proceed with trial but was then stymied by the fact that Petitioner had arrived at court clad in jail "greens" without any appropriate clothing for trial.  (*Id*. at PageID.75-77.)  The court adjourned the jury selection for a day to permit Petitioner to obtain appropriate clothing for the trial.  (*Id*. at PageID.78.)

After setting a schedule for further proceedings, the court took the opportunity to

---

[1] Plaintiff attached the transcripts of his June 1, 2010 plea proceeding (ECF No. 1-2, PageID.75-84) and August 4, 2010 sentencing proceeding (ECF No. 1-2, PageID.85-89).  They shall be referenced herein as (Plea transcript, PageID.__) and (Sentencing transcript, PageID.__) respectively.

impress upon Petitioner the gravity of the potential sentences he faced. (*Id*. at PageID.79-80.) Less

than ninety minutes later, Petitioner and the prosecutor had reached agreement on a plea:

> MS. KITTEL MANN:        In the break your Honor graciously gave us, I did
> contact Bill Forsyth, and he authorized me to offer this defendant upon successful
> plea and sentencing as charged to the reduced charges of two counts of assault with
> intent to do great bodily harm and one count of felony firearm, which is the existing
> Count 5, as a habitual offender Supp 4, the People agree to dismiss the assault with
> intent to murder charges, dismiss the felon in possession, and the carrying a
> concealed weapon charge.
>
>         And the – I've been advised by counsel that defendant might have – he feels
> that perhaps he's not – he does not have a Supp 4 rating, but, in fact, he's been – I
> have the convictions here for felony firearm, armed robbery, and carjacking, which
> by themselves are three, plus we've listed a Wayne County charge that's a felony.
> So in any event part of the plea agreement is wherever he ends up on the OV's and
> PRV's based on two counts of assault GBH and felony firearm, he agrees that the
> range will be the Supp 4 range in whatever cell that falls.
>
> THE COURT:        Okay, All right, is that an accurate summary? It's obviously
> quite different–
>
> MR. WATERS:        That's accurate.
>
> THE COURT:        – than the last – than where we were at before, but – okay.
>         Mr. Alonzo is that your understanding of what the plea offer that you intend
> to offer a plea of guilty to is?
>
> THE DEFENDANT:  Yes, sir, I do.

(*Id*. at PageID.80.)[2]  As the proceeding continued, Petitioner acknowledged that he was on parole.

(*Id*.)  Petitioner acknowledged that the maximum penalty for assault with intent to do grievous

bodily harm was typically ten years and, further, that the maximum penalty would be increased to

life imprisonment because of three prior felony convictions. (*Id*. at PageID.81.)  Petitioner

acknowledged that the maximum penalty for felony firearm was an additional, consecutive two year

---

[2]The People were represented by assistant prosecuting attorney Janice Kittel Mann.  Petitioner was represented
by attorney John O. Waters.  (Plea transcript, PageID.75.)

sentence. (*Id.*) Petitioner stated that no other promises had been made to him to obtain his guilty plea. (*Id.*)

The court reviewed the judgment of conviction from Petitioner's three prior felonies. Petitioner acknowledged the convictions. (*Id.* at PageID.82.) The court informed Petitioner that even though all three convictions happened in one case based on his conduct on one day, each conviction would count as a prior felony. (*Id.*) The court then questioned Petitioner to confirm the underlying facts supporting Petitioner's guilty plea. (*Id.* at PageID.82-83.) Before adjourning, the court confirmed once more that Petitioner was aware the maximum penalty on the assault counts was life imprisonment, that no other promises had been made to Petitioner, and that he was pleading guilty freely and voluntarily. (*Id.* at PageID.83.) Following his guilty plea, Petitioner was convicted of two counts of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and one count of felony firearm, MICH. COMP. LAWS § 750.227b.

Petitioner was sentenced on August 4, 2010. He communicated with his counsel prior to the proceeding. By letter dated July 7, 2010 (ECF No.1-2, PageID.72), counsel provided Petitioner his presentence investigation report and sentencing recommendation. Counsel stated:

> You will note that the probation agent who wrote the report recommends that the two assault sentences run concurrently, which will undoubtedly disappoint the prosecutor, who mistakenly believed these sentences had to run consecutively. As a result the recommended sentence is five and half years (2 for the firearm and 3.5 for the two assaults), which is 3.5 years less than the prosecution intended. Although this is a victory of sorts, the Judge is not required to follow the recommendation and the prosecutor will probably request a longer sentence.

(*Id.*) Counsel raised several concerns regarding the presentence investigation report at the sentencing. He convinced the court to change the scoring on several Offense Variables (OVs). (Sentencing transcript, PageID.86.) That brought Petitioner's minimum sentence from a range of

-4-

43 to 152 months to a range of 38 to 152 months.  (*Id*.)  Counsel succeeded in obtaining a correction

of a factual error in the presentence investigation report.  (*Id*. at PageID.87.)  Counsel also noted

that, though Petitioner was technically still on parole, Petitioner should have been discharged from

parole years earlier.  (*Id*. at PageID.87-88.)  He failed to report the event that would have made him

eligible for discharge, the payment of restitution, because he was not aware it had occurred.  (*Id*.)

It had been accomplished by payments from his co-defendant.  (March 11, 2010 Correspondence,

ECF No. 1-2, PageID.70.)  Counsel asked the court to consider the effects that the erroneous

continuation on parole would have.   (Sentencing transcript, PageID.87-88.)   Petitioner was

sentenced as a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12, to 7 to 35 years

imprisonment for each assault conviction and 2 years for the felony-firearms conviction.  (*Id*. at

PageID.88-89).

Petitioner filed a delayed application for leave to appeal in the Michigan Court of

Appeals raising the following grounds for relief (verbatim):

> I.    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF
> COUNSEL AS GUARANTEED BY THE VI AND XIV AM. OF
> THE U.S. CONST., MICH. CONST. 1964, ART. I, §2, 17, WHEN
> COUNSEL FAILED TO INVESTIGATE THE CLAIM OF
> PAROLE STATUS, FAILED TO OBJECT THE SCORING OF PRV
> 6, FAILED TO REQUEST AN EVIDENTIARY HEARING TO
> PROPERLY CHALLENGE THE INFORMATION PRV 6 WAS
> BASED ON, WHICH VIOLATED DEFENDANT'S RIGHT TO
> DUE PROCESS WHEN SENTENCE WAS BASED IN PART ON
> INACCURATE INFORMATION.

> II.   DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED
> WHEN THE PLEA AGREEMENT WAS BREACHED BY THE
> COURT AND PROSECUTOR WHEN THE AGREEMENT AT
> PLEA HEARING WAS THAT THE SENTENCE WOULD BE AS
> TO WHERE DEFENDANT'S OV AND PRV SCORES FELL AT
> IN THE SUPP 4 RANGE, AND COUNSEL WAS INEFFECTIVE

FOR FAILING TO OBJECT TO THE BREACHING OF THAT AGREEMENT AT SENTENCING.

III.     MICHIGAN'S CURRENT INTERPRETATION OF THE FOURTH HABITUAL OFFENDER LAW VIOLATED THE VIII AM. OF THE U.S. CONST. AND ALLOWS FOR UNFETTERED ABUSE OF DISCRETION BY THE COURTS AND PROSECUTORS, AND MCL 769.12 AND MCL 777.57 ARE IN PARA MATERIA.

IV.     DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHEN COUNSEL FAILED TO RAISE THE MOST SIGNIFICANT AND OBVIOUS ISSUES THAT ARE NOW BEING PRESENTED IN THIS BRIEF, ALSO FAILED TO INVESTIGATE DEFENDANT'S PAROLE STATUS CLAIM, FAILED TO SUBMIT DEFENDANT'S PRO PER SUPPLEMENTAL BRIEF AFTER HAVING FILED A LATE APPLICATION FOR LEAVE TO APPEAL WHICH ONLY INCLUDED COUNSEL'S OWN BRIEF, THUS ALLOWED FOR THE COURT OF APPEALS TO ISSUE A DECISION BEFORE THE 84 DAY TIME LIMIT, IN VIOLATION OF U.S. CONST. AMS. V, VI, XIV, AND MCR-ADMINISTRATIVE ORDER 2004-6(4).

(ECF No.1, Page ID.27.)[3]

The court of appeals denied Petitioner's delayed application on July 12, 2011.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same

grounds identified above.  The Michigan Supreme Court denied leave to appeal on January 30, 2012.

---

[3]Petitioner claims he raised these issues in the Michigan Court of Appeals on his direct appeal.  He does not attach the brief filed by his appellate counsel nor does he attach his pro per supplemental brief, a brief that the court of appeals may not have permitted him to file.  (ECF No. 1-1, PageID.17) ("On July 29, 2011, appellate Counsel Gary L. Kohut filed a Motion for Reconsideration and a Motion for Time Extention [sic] in order for Defendant to submit his Pro Per Supplemental Brief, being that it was not submitted by Counsel . . . ; [o]n August 26, 2011, the Court of Appeals entered its Order denying both motions.") The first document submitted by Petitioner that includes these issues is his application for leave to appeal to the Michigan Supreme Court.  Even if Petitioner failed to raise these issues at the Michigan Court of Appeals on his direct appeal, the court of appeals had an opportunity to consider them on Petitioner's appeal of the circuit court's denial of his first motion for relief from judgment.

Petitioner filed a motion for relief from judgment under MICH. CT. R. 6.500 *et seq.* in the Kent County Circuit Court raising the same four grounds for relief.  Petitioner's motion was denied on February 15, 2013.  In resolving the motion the court stated:

> A review of the court file reflects that the Sentencing Information Report demonstrates that the defendant had 75 Prior Record Variable points and at least 70 Offense Variable points.  The adjusted sentencing guideline range under the assault with intent to commit great bodily harm less than murder was a period of not less than thirty-eight (38) nor more than one hundred fifty-two (152) months.  Had the defendant been convicted at trial as a Supp IV felony offender of assault with intent to commit murder the sentencing guidelines with the same Prior Record Variable score and Offense Variable score would have been not less than one hundred seventy-one (171) months nor more than five hundred seventy (570) months.

> The Court is fully satisfied that the defense counsel who represented the defendant at trial in the trial court and at the plea proceeding was highly effective, negotiated a substantially favorable plea resolution for the defendant and that the defendant was sentenced within the properly scored sentencing guideline range and received a sentence which was substantially more favorable than he would have received had he gone to trial and been convicted as charged.

> The claim of ineffective assistance of counsel is governed by the *Strickland v. Washington*, 466 US 668 (1984) standards.  In order to prevail the defendant must show that the trial counsel's performance fell below an objective standard of reasonableness and that due to counsel's deficient representation the defendant was prejudiced in the outcome of his case and that his due process rights were violated. Nothing could be further from the conclusion of this Court.

> The Court is completely satisfied that the representation received by the defendant was more than substantially adequate, it was in fact quite favorable, and the outcome that the defendant received was substantially more beneficial than he would have received but for the representation of defense counsel in this case.

*People v. Alonzo*, No. 10-01253-FC (Kent Cty. Circuit Court, February 15, 2013).  Petitioner appealed the denial of his motion for relief from judgment to the Michigan Court of Appeals and Michigan Supreme Court, which denied Petitioner's applications for leave to appeal on December 27, 2013 and July 29, 2014, respectively.

-7-

Petitioner then filed this action, raising the same four grounds for relief and one additional unexhausted claim based on newly discovered evidence regarding counsel's ineffective assistance. (ECF Nos. 1, 3.) By an opinion and order dated October 9, 2014, this Court stayed the habeas corpus proceeding pending Petitioner's exhaustion of the new issue in the state courts. (ECF Nos. 5-6.)

On November 5, 2014, Petitioner filed his second motion for relief from judgment in the Kent County Circuit Court. That court denied the motion as successive on December 10, 2014. The Michigan Court of Appeals dismissed Petitoner's application for leave to appeal because petitioner had "failed to demonstrate his entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment." *People v. Alonzo*, Docket No. 325437 (Mich. App. February 13, 2015). The Michigan Supreme Court denied Petitioner's application for leave to appeal "because the defendant's motion for relief from judgment is prohibited by MCR 6.502(G)." *People v. Alonzo*, No. 151334 (Mich. February 2, 2016).

On March 16, 2016, this Court reopened the habeas corpus proceeding and ordered Petitioner to file an amended petition. (ECF No. 11) On April 8, 2016, Petitioner filed an amended petition raising the four issues he had previously raised and one newly exhausted issue:

> V. TRIAL COUNSEL WAS INEFFECTIVE BASED ON HIS COMPROMISED ETHICS AND INVOLVEMENT IN CRIMINAL ACTIVITY/INVESTIGATION DURING TIME RETAINED TO REPRESENT PETITIONER AT TRIAL.

(ECF No. 12, PageID.204.) Essentially, Petitioner complains of three flaws related to his sentence: (1) the trial court breached its obligation under the plea agreement to sentence Petitioner to five and one-half years imprisonment; (2) Michigan's sentence enhancement for habitual offenders is

unconstitutional; and (3) Petitioner's guidelines scoring should not have included points for being on parole at the time the crime was committed because he should not have been on parole. Petitioner then complains that his trial counsel was ineffective for not raising those issues and because he used and dispensed drugs and his appellate counsel was ineffective because he failed to raise the three sentencing issues and trial counsel's ineffectiveness.

II.     Standard for resolving Petitioner's claims

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable

facts. *Bell*, 535 U.S. at 694 (citing *Williams v. Taylor*, 529 U.S. 362,  405-06 (2000)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th

-10-

Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).    The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).  Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

III.    There was no breach of the plea agreement

The breach of a plea agreement can be constitutionally significant.  In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise must be fulfilled." *Id.* at 262.  The Supreme Court subsequently clarified that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty.  *See Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984).   Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea; the Constitution does not require specific performance.  *See Santobello*, 404 U.S. at 263; *Mabry*, 467 U.S. at 510 n.11.

Petitioner claims that the plea agreement was breached when the court sentenced him to a minimum sentence of seven years on each of the assault counts.  The plea agreement included these terms: "wherever he ends up on the OV's and PRV's based on two counts of assault GBH and felony firearm, he agrees that the range will be the Supp 4 range in whatever cell that falls." (Sentencing transcript, PageID.80.)  The presentence investigation report determined that the OV's and PRV's yielded a range of 43 to 152 months.[4]  Petitioner contends that the above-quoted language requires a sentence of three and one-half years.  Petitioner either misconstrues the agreement or Michigan's sentencing scheme.

"Michigan has adopted a sentencing scheme based in part on statutorily defined sentencing ranges and in part on sentencing guidelines. The maximum penalty is set by statute, but the minimum penalty is determined by the sentencing court and must fall within a mandated guidelines range." *Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010) (citation omitted).[5]  When

---

[4]Petitioner and his counsel referred to the low end of that range as three and one-half years.  (ECF No. 1-2, PageID.72.)

[5]Subsequent to the *Montes* court's description of Michigan's sentencing scheme, the Michigan Supreme Court, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), made the minimum guidelines range advisory and eliminated the requirement that the sentencing court provide a substantial and compelling reason for departing from the minimum

Petitioner agreed to the minimum sentence yielded by the "OV's and PRV's" he was not agreeing to a particular length of time, he was agreeing to a range. The range identified in the presentence investigation report was 43 to 152 months. Petitioner's counsel succeeded in reducing the OV point total by almost half at the hearing. The final range was 38 to 152 months. Petitioner's minimum sentence, seven years, fell within that range.

For Petitioner to now claim that the agreement was not a range when a range was specifically discussed at the plea proceeding is disingenuous. The same is true for Petitioner's suggestion that the agreement was for a sentence of three and one-half years where that term was never mentioned at the plea or sentencing. Indeed, the only time "three and one-half years" is even mentioned in the documents submitted by Petitioner is the July 7, 2010 correspondence from Petitioner's counsel. (ECF No. 1-2, PageID.72.) Even there a sentence of that duration is described only as a recommendation and counsel specifically notes that the judge was not required to follow the recommendation. (*Id.*)

In *Boyd v. Yukins*, 99 F. App'x 699 (6th Cir. 2004) the court cautioned against accepting "post hoc claims that [a defendant] subjectively believed the plea agreement to be different[,]" like Petitioner makes here. *Boyd*, 99 F. App'x at 703. To do otherwise would "render[ ] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). Petitioner's current self-serving contention that he made his plea based on the understanding his sentence would not exceed three and one-half years falls short of the clear and

---

sentence range specified by the guidelines.

convincing evidence necessary to overcome the state court's finding with respect to the content of the plea agreement.

IV.    Petitioner has failed to provide clear and convincing evidence that he was not on parole when he committed the crimes.

Petitioner complains that his PRV score was increased by ten points because the court concluded Petitioner was on parole when he committed the offenses.[6] Petitioner has offered no clear and convincing evidence to contradict the trial court's finding that Petitioner was on parole when he committed the assaults.  To the contrary, Petitioner has submitted his own sworn testimony that he was on parole.  (Plea transcript, PageID.80.)

To the extent that Petitioner maintains that, under the circumstances, he should not be considered "on parole" under the guidelines, he is raising a state-law issue only.  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  There is no constitutional right to individualized sentencing.  *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp.

---

[6]If Petitioner had not been on parole when he committed the offenses, his range would have been 34 to 134 months.  Michigan Judicial Institute, State of Michigan Sentencing Guidelines Manual (July 2009).

2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Petitioner further suggests that his sentence might violate due process because it is based upon a false fact: that he was on parole.  The error alleged by Petitioner does not rise to the level of a due process violation.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447;*United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's contention that he should not have been on parole does not render the conclusion that he was on parole materially false, particularly where he provided sworn testimony that he was on parole.  Petitioner, therefore, fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

V.     Michigan's habitual offender sentence enhancements are not cruel and unusual

Petitioner complains that Michigan's statutory sentencing enhancements for fourth felony offenders are unconstitutional because the resulting punishment is cruel and unusual where, as is the case here, all three prior felonies were the product of one criminal transaction.  In *People v. Gardner*, 753 N.W. 2d 78 (Mich. 2008), the Michigan Supreme Court held "[t]he unambiguous statutory language directs courts to count each separate felony conviction that preceded the sentencing offense, not the number of criminal incidents resulting in felony convictions."  *Id.* at 81.  In so holding, the *Gardner* court overruled its prior determinations that "multiple felonies that arise from the same criminal incident or transaction count as a single felony under the habitual offender laws."  *Id.*[7]

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim.  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.

---

[7]Petitioner incorrectly notes that a 2012 amendment to the habitual offender statute that enhanced his sentence effectively overruled *Gardner*.  Section 769.12 of the Michigan Compiled Laws now includes the following language: "If a person has been convicted of any combination of 3 or more felonies . . . the person shall be punished upon conviction of the subsequent felony . . . as follows: (a) . . . the court shall sentence the person to imprisonment for not less than 25 years.  Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only."  MICH. COMP. LAWS § 769.12.  Although this change is certainly a departure from *Gardner*, it applies only to the imposition of the 25 year minimum sentence.  Even if the section had been in place at the time of Petitioner's sentence, it would not change his minimum sentencing guidelines range.

*See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Additionally, Petitioner's suggestion that his sentence was disproportionate under the Eighth Amendment is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not

present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Finally, Petitioner's sentence is not unconstitutional simply because the state sentence might have been different had the federal sentencing guidelines been applied. *See Cowherd v. Million*, 260 F. App'x 781, 787 (6th Cir. 2008). As the Sixth Circuit has recognized, "[t]he Supreme Court has not . . . ever held or suggested that state sentences and federal sentences must approximate each other in order to pass constitutional muster." *Id.* Thus, the fact that the federal sentencing guidelines might count prior felonies differently does not render Michigan's method of counting prior felonies unconstitutional.

> VI. <u>Petitioner has failed to demonstrate that the state court's conclusions regarding counsels' effectiveness were contrary to or an unreasonable application of clearly established federal law.</u>

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

The state trial court expressly relied on the *Strickland* standard when it determined that counsel was not simply adequate, but quite effective.  (ECF No. 1-3, PageID.97-98.)  The court contrasted the result counsel achieved with the sentence Petitioner would have faced had he been convicted at trial of the original charges.  (*Id.*)  That dramatic improvement certainly presents a reasonable argument that counsel satisfied the *Strickland* standard and belies any claim of prejudice.

Moreover, the issues that Petitioner claims his trial counsel failed to pursue were without merit.  Even if Petitioner should have been released from parole prior to his crimes, it is undisputed that he had not been released.  Petitioner acknowledged that he was on parole even at the plea hearing.  Any challenge to the determination that Petitioner was on parole when he

-19-

committed the assaults would have been flatly rejected.  Similarly, Petitioner's argument that the habitual offender statute that enhanced his sentence requires three prior criminal *transactions* instead of three prior criminal **convictions** is without merit.  Finally, Petitioner's claim that the court breached the plea agreement finds no support in the record.  The court's determination that counsel's failure to raise these issues was objectively reasonable is not contrary to, or an unreasonable application of, *Strickland*.

Petitoner's assertion that his trial counsel was ineffective because he may have been using illegal drugs while he represented Petitioner is not, standing alone, sufficient.  Petitioner must link the "substance abuse by his attorney . . . to deficient performance that prejudiced the defense." *Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also Ivory v. Jackson*, 509 F.3d 284 (6th Cir. 2007) (holding that counsel's drug and alcohol abuse is not *per se* prejudicial).  As set forth above, Petitioner has failed to demonstrate his trial counsel's performance was objectively unreasonable in some respect.  Absent such a deficiency, even if counsel used drugs, it does not constitute ineffective assistance.

Appellate counsel's failure to raise the parole issue, the strained interpretation of the habitual offender statute, the court's alleged breach of the plea agreement, or trial counsel's alleged ineffectiveness,  is also objectively reasonable.  The issues are without merit.  To the extent appellate counsel failed to timely submit Petitioner's pro per supplemental brief, he only failed to put before the court these same meritless issues.  Even if such a failure were objectively unreasonable, Petitioner could not show any resulting prejudice.  The Michigan Court of Appeals considered and rejected the issues on Petitioner's appeal of the trial court's denial of Petitioner's first Rule 6.500 motion.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   May 17, 2016                        /s/ Janet T. Neff                              
                                             Janet T. Neff
                                             United States District Judge